**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**ANDERSON C. HAMILTON**                                              **PLAINTIFF**

**vs.**                                                 **CIVIL ACTION NO. 2:10cv00054-SSA**

**MICHAEL ASTRUE,
Commissioner of Social Security**                                     **DEFENDANT**

**MEMORANDUM OPINION**

      This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Anderson C. Hamilton for a period of disability and disability insurance benefits (DIB) under Section 216(i) and 223(d) of the Social Security Act. Plaintiff filed an application for DIB on November 16, 2005, alleging disability beginning on March 28, 2002.[1] Docket 4, Exhibit 6, p. 123-125.[2] Plaintiff's claim was denied initially (Ex. 5, p. 72-75) and on reconsideration. Ex. 5, p. 77-79. He filed a request for hearing (Ex. 5, p. 80) and appeared *pro se* at the administrative hearing on February 15, 2008. Ex. 3, p. 25-69. The Administrative Law Judge (ALJ) issued an unfavorable decision on July 25, 2008. Ex. 3, p. 8-24. Following the ALJ's decision, plaintiff retained legal counsel and requested review by the Appeals Council. Ex. 3, p. 6. Ex. 6, p. 221. Plaintiff's counsel submitted comments and additional medical evidence from a treating physician[3] to the

---

    [1]The Commissioner states that the plaintiff protectively filed for benefits on November 9, 2005. Docket 10, page 1.

    [2]The Administrative Record in this case is attached to the defendant's Answer at Docket Entry 4. All citations to the Administrative Record are to the Exhibit and Page Number at Docket Entry 4.

    [3]Plaintiff's counsel provided the Appeals Council with a letter dated May 2009 from Dr. Jordan, a treating internist. Dr. Jordan opined that the plaintiff was totally disabled due to

Appeals Council (Ex. 7, p. 224-231), which denied the request for review on February 20, 2010. Ex. 3, p. 1-5. Plaintiff filed the instant appeal from the denial of benefits, and it is now ripe for review. Because both parties consented to have a magistrate judge conduct all the proceedings in this case under 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born on March 30, 1965. Ex. 3, p. 11. He was thirty-six years old at the alleged onset of his disability and forty-two years old on the date he was last insured, September 30, 2007. Ex. 6, p. 123. He completed high school and one year of college and had worked previously as a chef.[4] Ex. 3, p. 63. Plaintiff initially claimed disability beginning March 28, 2002 due to "broken back, arthritis, screws in leg, severe bi-polar, heart blockage, lung damage." Ex. 7, p. 151.

The ALJ determined that plaintiff had neck disorder, back disorder, gastro-intestinal disorders, pulmonary disorder, bi-polar disorder and poly-substance abuse and dependence that, in combination, constituted "severe" impairments, but that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. 404.1520(d). Ex. 3, p. 14. He found that plaintiff's neck and back disorders did not meet the criteria of Listings 1.04A, -B or -C because the medical evidence did not suggest nerve root compression, spinal arachnoiditis, or spinal stenosis with pseudo-claudication. *Id.* He further held that the

---

chronic pain, osteopenia, osteoarthritis, bipolar disorder and COPD. Ex. 9, p. 489.

[4]Plaintiff testified that his job duties included cooking and supervising (chef and sous chef). Ex. 3, p. 63-66.

plaintiff's gastro-intestinal disorders did not meet the severity required under Listings 5.01, 5.02, 5.03, 5.04, 5.05, 5.06, 5.07, 5.08 or 5.09, and the plaintiff's pulmonary disorder did not meet or medically equal the severity required under Listing 3.01. Ex. 3, p. 14-15. In evaluating the plaintiff's mental impairments, including the poly-substance abuse disorder, the ALJ found that Listings 12.04 and 12.09 were not met.[5] Ex. 3, p. 15.

The ALJ concluded that, considering plaintiff's "severe" impairments including his poly-substance abuse disorder, the plaintiff retains the Residual Functional Capacity (RFC) to perform a reduced range of light work as defined in 20 C.F.R. 404.1567(b) in that physically he can "lift, carry, push, and pull 20 pounds occasionally and ten pounds frequently. He can stand and walk for six hours in an eight-hour work day and can sit for six hours in an eight-hour work day. He can occasionally perform climbing, balancing, stooping, crouching, kneeling and crawling. He cannot tolerate continuous exposure to temperature extremes, humidity, chemicals, dust or fumes." Ex. 3, p. 15. In evaluating plaintiff's mental issues, the ALJ found that he "retains 'poor to no' abilities to deal with work stresses, function independently, maintain attention and concentration, understand, remember, and carry out complex job instructions or detailed job instructions, behave in an emotionally stable manner, or demonstrate reliability. He retains 'limited but satisfactory' abilities to follow work rules, interact with supervisors, co-workers, and the general public, as well as to understand, remember, and carry out simple job instructions." *Id.*

---

[5] The ALJ found that the plaintiff's "B" criteria mental impairments caused "moderate" restrictions in the activities of daily living and social functioning, "marked" difficulties in maintaining concentration, persistence or pace and one or two episodes of de-compensation. Ex. 3, p. 15.

After evaluating the evidence in the record, including testimony and interrogatories by a vocational expert [VE], the ALJ held that due to his "severe" impairments, including his poly-substance abuse disorder, plaintiff could not perform his past relevant work. Ex. 3, p. 18. The VE testified explained through interrogatories that a hypothetical individual with the RFC adopted by the ALJ could not perform work as a chef, a skilled job at the light level of exertion, or as a cook, a skilled job at the medium level of exertion.[6] Ex. 7, p. 208. The ALJ further determined that the plaintiff's job skills do not transfer readily to any other occupations (Ex. 3, p. 18), and no jobs exist in significant numbers in the national economy which the claimant can perform. Ex. 3, p. 19.

The ALJ went on to find that the plaintiff's substance abuse disorder constituted a contributing factor material to the determination of disability and examined whether the plaintiff's physical and mental limitations would remain if the plaintiff discontinued his substance abuse. Ex. 3, p.19-24. He found that even without poly-substance abuse the plaintiff would experience "severe" impairments of a back disorder, a gastro-intestinal disorder, a pulmonary disorder, and a bi-polar disorder, and that his physical RFC would not change. Ex. 3, p. 20. In that circumstance, however, plaintiff's mental RFC would be very different, reflecting a limited but satisfactory ability "to understand, remember, and carry out detailed instructions and short, simple instructions; to maintain attention and concentration; to perform activities within a schedule; to sustain an ordinary routine; to work with others without becoming distracted by them; to make simple work-related decisions; to complete a normal work

---

[6]The VE reasoned that the plaintiff has "poor to no ability to deal with work stresses, function independently, attend or concentrate, understand and carry out detailed or complex job instructions, behave in emotionally stable manner or demonstrate reliability." Ex. 7, p. 208.

day and work week without psychologically-based interruptions; to interact appropriately with the general public and supervisors; to ask simple questions or request assistance; to get along with co-workers without distracting them; to maintain socially appropriate behavior; to respond appropriately to changes in the work setting; to be aware of normal hazards; to travel in unfamiliar places; and to set realistic goals or plans." Ex. 3, p. 20.

The ALJ concluded that given this RFC in the absence of poly-substance abuse, the plaintiff would remain unable to perform past relevant work. Ex. 3, p. 22. In light of the VE's opinion that a person with that RFC could perform other work such as a cashier, a small product assembler and an electrical accessory assembler (Ex. 7, p. 205), the ALJ determined that the plaintiff "would be capable of meeting the intellectual and emotional demands of at least unskilled, competitive, remunerative work on a sustained basis" and therefore was not disabled. Ex. 3, p. 23.

The plaintiff claims the ALJ erred in finding poly-substance abuse material to plaintiff's disability and in failing to develop the record adequately. Docket 9, p. 14-23. The plaintiff further claims that the Appeals council failed to properly consider new and material medical evidence. *Id.*

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[7] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining his burden at

---

[7]*See* 20 C.F.R. §§ 404.1520 (2003).

each of the first four levels, then the burden shifts to the Commissioner at step five.[8] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[9] Second, plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[10] At step three the ALJ must conclude plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[11] If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[12] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[13] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that he cannot, in fact, perform that work.[14]

This court is limited on appeal to determining whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Qualls v. Astrue*, 339 Fed. Appx. 461 (5th Cir. 2009), citing *Brown v. Apfel*, 192 F.3d

---

[8] *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b) (2003).

[10] 20 C.F.R. § 404.1520(b) (2003).

[11] 20 C.F.R. § 404.1520(b) (2003).

[12] 20 C.F.R. § 404.1520(e) (2003).

[13] 20 C.F.R § 404.1520(f)(1) (2003).

[14] *Muse*, 925 F.2d at 789.

492, 496 (5th Cir.1999). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has the limited power of review and may not re-weigh the evidence or substitute its judgment for that of the Commissioner,[15] even if it finds that the evidence leans against the Commissioner's decision.[16] In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

If, after the five step sequential process, the ALJ determines that a plaintiff is disabled, but there is medical evidence in the record of drug addiction or alcoholism, the ALJ must determine whether that substance abuse is a "contributing factor material to the Commissioner's

---

[15]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[16]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

determination of disability." 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 404.1535(a).[17] If the ALJ finds that a plaintiff's "remaining limitations would not be disabling, [the ALJ] will find that [the plaintiff's] drug addiction or alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(b)(2)(I). If alcoholism or drug addiction is a contributing factor material to the determination of disability, then the plaintiff is not considered disabled and is ineligible to receive benefits. 42 U.S.C. § 1382c(a)(3)(J). In contrast, drug addiction or alcoholism is not a "contributing factor material to the determination of disability" if the claimant still would be disabled even if he stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b)(1). It is the claimant who "bears the burden of proving that drug or alcohol addiction is not a contributing factor material to [his] disability." *Brown v. Apfel,* 192 F.3d 492, 498 (5th Cir.1999).

## III. DISCUSSION

The plaintiff has not engaged in substantial gainful activity since March 28, 2002, satisfying step one.[18] Ex. 3, p.13. The ALJ found at step two that plaintiff's neck disorder, back

---

[17]The 1996 Amendments changed the provisions of 42 U.S.C. §§ 423 and 1382 which are the bases, respectively, for awards of DIB benefits. As amended, the Social Security Act now provides that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addition would (but for this paragraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). As a means of implementing these reforms, the Social Security Administration adopted regulations which direct the ALJ's mechanical application of the law. 20 C.F.R. §§ 404.1535; 416.935. Under these regulations, a finding of disability is a condition precedent to the requirement that the ALJ inquire as to whether alcoholism or drug addition is a contributing factor to the disability. *Oritz v. Apfel*, 39 F. Supp. 2d (D. Kan. 1998) ("Sections 404.1535(a) and 416.935(a) . . . clearly demonstrate that the Commissioner must find disability before applying the amendatory language.").

[18]The plaintiff earned $6,700.00 in 2003 and $3,559.22 in 2004. However, the ALJ found that these earnings did not constitute "substantial gainful activity" within the meaning of the

8

disorder, gastro-intestinal disorders, pulmonary disorder, bi-polar disorder and poly-substance abuse and dependence, in combination, were severe impairments. Ex. 3, p. 14. He found at step three that plaintiff's impairments did not meet the stringent requirements set out in the listings,[19] and at step four that plaintiff could not return to his past work. Ex. 3, p. 14-15. The ALJ concluded at step five that the plaintiff is not capable of performing other work and, when his poly-substance abuse is included with plaintiff's other impairments, he is disabled. Ex. 3, p. 19.

As required by 20 C.F.R. § 404.1535, the ALJ then evaluated the plaintiff's claim under the drug addiction and alcoholism analysis. In light of the two consultative evaluations by Dr. Leonard, the ALJ determined that plaintiff's "long-standing and ongoing poly-substance abuse and dependence constitute a contributing factor material to the determination of disability," and he is therefore not disabled. Ex. 3, p. 21, 23. The ALJ relied on Dr. Leonard's comprehensive mental status evaluation of January 2006, which reported that the plaintiff "appeared alert and oriented with goal-directed thoughts, an appropriate affect, a euthymic mood, fair to good concentration, and an estimated average to high average intelligence," and on Dr. Leonard's evaluation of October 2007, at which the plaintiff "appeared fully oriented and alert, with primarily goal-directed thoughts, a cheerful mood, an appropriate affect, good concentration, and an estimated high average intelligence." Ex. 3, p. 21. Dr. Leonard detailed plaintiff's conflicting reports of substance abuse,[20] yet apparently believed that the plaintiff was sober

---

Social Security Act. Ex. 3, p. 13-14.

[19] *See Selders v. Sullivan*, 914 F.2d 614, 617, 619 (5th Cir. 1990), citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990) (claimant bears the burden of proof to show medical findings that he meets each element of the listing).

[20] In January 2006, Dr. Leonard reported that "[plaintiff] first drank alcohol at 15 y/o and last used it six mo[nths] ago. He has been attending AA 2-3/wk for 3 mo[nths], since his

9

during his evaluations, as argued by the Commissioner. The ALJ ultimately determined that Dr. Leonard's *opinions* did "not account for the [plaintiff's] poly-substance abuse disorder"[21] (Ex. 3, p. 17), but he nevertheless relied on the doctor's *reports* when he decided plaintiff's RFC absent poly substance abuse.

The ALJ also considered consultative examinations by Dr. Powers,[22] Dr. Greenberg and

---

discharge from Parkwood hospital. However he denied ever having any problems due to his alcohol usage. He did report drinking alcohol "all the time." He did drink at work, often to "chill out"from his mania. He presently does not drink alcohol. He last used cocaine five years ago, and last used marijuana at 20 y/o." Ex. 8, p. 319. In October 2007, Dr. Leonard reported that the plaintiff's description of his alcohol and drug history was not consistent with his prior evaluation. In contrast with his prior statements, he reported [h]e first drank alcohol at 17 y/o, and last used it 2 years ago. He drank heavily from 28-31 y/o, and he quit drinking when he met his wife. When asked about meeting his wife 12 years ago, but quit drinking 2 years ago, he reported he quit drinking heavily 2 years ago, but admitted to sneak drinking occasionally which leads to conflicts with his spouse. He denied problems due to alcohol, including no DUI. He reported never having an alcoholic blackout. He reported never being told he has a substance abuse problem. When asked about attending AA meetings as stated in his last report, he did admit that his wife has told him he had a problem with alcohol. He also indicated that from 28-30 y/o he would drink a fifth of whiskey per night. He has used marijuana in his 20's, he last used cocaine 10 years ago, he used LSD and methamphetamine in high school. He denied injecting any illicit drugs, then corrected himself and reported injecting heroin for one year when 19 y/o after he broke his back, and he also got "hooked" on pain meds at that time." Ex. 9, p. 386.

[21] The ALJ chose not to credit Dr. Leonard's opinion to determine the first RFC [which included poly-substance abuse] because his opinion "does not account for the [plaintiff's] poly-substance abuse disorder." Ex. 3, p. 17. However, in addition to relying on Dr. Leonard opinion to infer that abuse was a contributing factor, the ALJ gave significant weight to the doctor's opinion when he determined the second RFC [in the absence of poly-substance abuse]. *Id.*

[22]Dr. Powers, a state agency psychologist, assessed the plaintiff's mental function and found that his "residual functional capacity allows for routine, repetitive tasks here. [Plaintiff] can concentrate adequately and attend to tasks to the extent that simple work is possible. [Plaintiff] can avoid hazards, remember and understand basic tasks and carry them out. [Plaintiff] can relate to co-workers and supervisors and can psychologically complete a normal workweek. There are no severe limitations that would preclude simple work." Ex.8, p. 322-325. The ALJ found that his assessment established that the plaintiff's impairments were severe but that his opinion appeared consistent with the RFC adopted in absence of substance abuse, supporting the ALJ's RFC. Ex. 3, p. 20, 22.

Dr. Randolph, and afforded them varying degrees of weight in evaluating the plaintiff's limitations including the poly-substance abuse. Ex. 3, p. 11-24. However, as the plaintiff argues, the relevant inquiry is "what limitations would remain if [the plaintiff] retained sobriety."

In the face of this contradictory evidence regarding the extent and history of plaintiff's substance abuse,[23] the ALJ found "longstanding and ongoing" abuse of multiple substances – including cocaine, marijuana, LSD, methamphetamine and prescription pain medications (Ex. 3, p. 21) – which required him to determine whether the plaintiff's remaining limitations would be disabling if plaintiff did not abuse such substances. 20 C.F.R. § 404.1535(b)(2)(I). The plaintiff contends on appeal that because the record is devoid of medical evidence projecting the limitations that would remain if the plaintiff stopped using drugs or alcohol, the ALJ committed reversible error. Docket 9, p. 16-17.

The Commissioner argues that the ALJ properly evaluated the plaintiff's claim and properly relied on Dr. Leonard's finding that the plaintiff was functioning "fairly well" during his "apparent absence of poly-substance abuse." Docket 10, p. 9. The Commissioner further argues that the ALJ properly discounted the opinion of the plaintiff's treating physician, Dr. Collins, because he "did not have the opportunity to assess Plaintiff during a period of sobriety." Docket 10, p. 10.

The ALJ afforded little weight to plaintiff's treating psychiatrist, Dr. Collins, when he

---

[23]In addition to the contradictions discussed in Dr. Leonard's evaluations, the ALJ noted numerous discrepancies in the medical records and plaintiff's testimony regarding his substance abuse. Ex. 3, p. 21. The medical records reflect abuse of marijuana, crack cocaine, powder cocaine, prescription pain medications and heroin (Ex. 9, p. 259-267, 384-390), including hospitalization for heroin abuse. Ex. 8, p. 246-258. The plaintiff testified that he last used cocaine approximately 10 years ago and never received institutional assistance for cocaine abuse. Ex. 3, p. 58-62. He further denied the abuse of prescription medication. Ex. 3, p. 59.

determined plaintiff's mental residual functional capacity in the absence of drug and alcohol abuse because "Dr. Collins's conclusion makes no reference to the claimant's apparent poly-substance abuse." Ex. 3, p. 17. In a letter dated March 23, 2006, however, Dr. Collins reported treating the plaintiff since 2002 for "Bipolar Disorder-Mixed State, Severe" and described his bipolar disorder as "chronic, severe and refractory to multiple treatment interventions." Ex. 8, p. 376. Dr. Collins stated that the plaintiff had started multiple jobs and college classes, but that his efforts were frustrated by his psychiatric symptoms, including erratic mood swings with irritability, impaired concentration, hyperactivity, racing thoughts, insomnia, poor judgment, impulsivity and impaired reality testing. *Id.* He opined that the plaintiff was intelligent and motivated but could not perform job duties on a consistent basis and felt that plaintiff was totally and permanently disabled. *Id.*

Although the ALJ inferred that "Dr. Collins undertook no assessment of the degree to which the claimant's apparent ongoing poly-substance abuse constitutes a contributing factor material to the determination of disability," (Ex. 3, p. 17), he never sought clarification or additional information from Dr. Collins on this critical issue. Furthermore, the ALJ assumed that Dr. Leonard evaluated the plaintiff during bouts of sobriety and that Dr. Collins did not have such an opportunity, but Dr. Leonard's reports do not specifically state that the evaluation was performed to the exclusion of substance abuse, as appears to have been required of Dr. Collins.

An ALJ has a duty to contact a treating physician or other medical sources "[w]hen the evidence . . . receive[d] from [a] treating physician . . . is inadequate . . . to determine whether [a claimant] is disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e). These regulations further provide "additional evidence or clarification *will* be sought" [emphasis added by the court] "when the

12

report from [a] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(2)(1), 416.912(e)(1). Additionally, "[a]n ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position.'" *Morgan v. Astrue*, 2010 WL 2697170, *8 (N.D.Tex. July 7, 2010), citing *Loza v. Apfel*, 219 F.3d 378,393 (5th Cir. 2000).

A treating physician such as Dr. Collins has a unique perspective regarding the plaintiff's abilities, limitations, medical history and diagnosis. Dr. Leonard, an agency physician, saw the plaintiff only twice. The Commissioner argues that Dr. Leonard's "longitudinal perspective" was particularly helpful (Docket 10, p. 9); this argument falls flat in the face of Dr. Collins's perspective as a treating physician since 2002 who saw plaintiff on many occasions, through most of plaintiff's relapses and other illnesses.

In severe mental illness cases, the Fifth Circuit has held that a plaintiff "is disabled if he can perform work but not enjoy sustained employment because of his condition." *Leidler v. Sullivan*, 885 F.2d 291, 294 (5th Cir. 1989). The plaintiff in *Leidler v. Sullivan*, 885 F.2d 291, 294 (5th Cir. 1989) suffered from paranoid schizophrenia and contended that his psychiatric problems prevented him from retaining employment for more than limited periods of time. The court noted that the plaintiff's difficulties in a job environment were not atypical of the problems encountered by the mentally ill and that "sporadic work history does not conflict with a finding of the onset of disability." *Id.*, at 293-294. Similarly, in this case Dr. Collins reported that the plaintiff's bipolar disorder prevents him from performing job duties on a consistent basis, and his efforts at employment are exacerbated by his psychiatric symptoms. Ex.8, 376. The ALJ found

that the plaintiff could hold an "unskilled, competitive, remunerative" job but did not address Dr. Collins's opinion that, because of symptoms of his bi-polar disorder, plaintiff could not *sustain* employment.

For an ALJ properly to afford lesser weight to the treating physician's medical opinions he must "perform a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). The ALJ declined to give the plaintiff's treating physician controlling weight without performing the analysis under *Newton*[24] and he made no attempt to obtain additional information that would have allowed him to evaluate Dr. Collins's opinion with the substance abuse issue clarified, even though the plaintiff was *pro se* and had bi-polar disorder, and his treating physician had an opinion directly opposed to the ultimate decision of the ALJ. As a result, the ALJ's decision is unsupported by substantial evidence and should be remanded for further proceedings.

The ALJ easily could have fully developed the record by seeking a medical source opinion from plaintiff's treating physician regarding his limitations absent the substance abuse. After the plaintiff retained counsel, Dr. Collins submitted a letter and a Psychiatric/Psychological Impairment Questionnaire to the Appeals Council. Ex. 9, p. 450-457. Dr. Collins reported that

---

[24]*Newton* noted the factors that an ALJ must consider before declining to give evidence of a treating physician controlling weight:
    (1)    the physician's length of treatment of the claimant,
    (2)    the physician's frequency of examination,
    (3)    the nature and extent of the relationship
    (4)    the support of the physician's opinion afforded by the medical evidence of record,
    (5)    the consistency of the opinion with the record as a whole, and
    (6)    the specialization of the treating physician.
*See* 20 C.F.R. § 404.1527(d)(2)

the plaintiff had been addicted to substances in the remote past, that "his past drug abuse was a consequence of job stress combined with multiple episodes of bipolar decompensation" and that plaintiff remained disabled. Ex. 9, p. 448. The ALJ's responsibility to develop the record is to "ensure that his decision is an informed decision based upon sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).

Relying upon *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999), the Commissioner argues that the plaintiff – not the Commissioner – has the burden of proving his disability in the absence of drug abuse and alcoholism. Docket 10, p. 8. It is certainly true that the plaintiff has "the burden of establishing disability" for the first four steps of the sequential evaluation procedure. *McKnight v. Astrue*, 340 Fed. Appx. 176, 180 (5th Cir. 2009,) and clearly the ultimate question of disability is one left to the Commissioner. *J.B. ex rel. Barboza v. Astrue*, 2010 WL 3622034, *2 (D.Mass. September 17, 2010); *Davis v. Califano*, 599 F.2d 1324,1328 (5th Cir. 1979). But it is also true that the ALJ has an affirmative duty to develop the record and to "ensure that his decision is an informed decision based upon sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). The Supreme Court has reminded us that Social Security administrative proceedings are "inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 2085 (2000). "It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ." *Id. See also* Robert W. Pratt, "From the Bench: Social Security Judging," 36 *Litigation* 3, 4 (Spring 2010). The undersigned finds that the ALJ failed to adequately develop the record; at the very least he should have re-contacted the treating physician for clarification as to whether Dr. Collins's opinion encompassed the plaintiff's poly-substance addiction.

## PLAINTIFF'S REMAINING ARGUMENTS

Reading the record as a whole, the court concludes that the ALJ's opinion is unsupported by substantial evidence and should be remanded for further development of the record. Because this action is being remanded for further evaluation consistent with this opinion, the court need not address the merits of the plaintiff's remaining arguments at this time.

## CONCLUSION

A final judgment in accordance with this memorandum opinion will issue this day.

**SO ORDERED**, this, the 23rd day of November, 2010.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE